AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

SEP 17 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                      DEPUTY

| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No. |
| | ) | |
| Samsung Cellular Phone, Model No. SM-J327T1, FCC ID A3LSMJ327T, and IMEI 355603/08/971740/1 | ) | |
| | ) | |

'19 MJ 3991

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
| --- | --- |
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances |
| 21 U.S.C. § 963 | Conspiracy |

The application is based on these facts:

See attached affidavit, incorporated herein

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

**HSI Special Agent Christian A. Whyte**
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __9/17/19__

*Judge's signature*

City and state:  San Diego, California

**The Honorable William V. Gallo**
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Attachment A

### *Item to be Searched*

The item to be searched is as follows:

> Samsung Cellular Phone
> Model No. SM-J327T1
> FCC ID A3LSMJ327T
> IMEI 355603/08/971740/1
> (the "**Target Device**")

The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, Suite 3200, San Diego, CA 92101.

# Attachment B

### *Items to be Seized*

Authorization to search the **Target Device** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below.  The seizure and search of the **Target Device** shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the **Target Device** will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from July 2, 2018 up to and including September 1, 2018:

      a.    tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

      b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

      e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

      f.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

1          g.      tending to place in context, identify the creator or recipient of, or

2   establish the time of creation or receipt of communications, records, or data involved in the

3   activities described above,

4   which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Christian A. Whyte, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1.     I make this affidavit in support of an application for warrants to search the electronic devices described in Attachment A (the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

> Samsung Cellular Phone
> Model No. SM-J327T1
> FCC ID A3LSMJ327T
> IMEI 355603/08/971740/1
> (the "**Target Device**")

This search warrant supports an investigation and prosecution of Roberto BENITEZ Jr., who is presently charged with committing violations of 21 U.S.C. §§ 952 and 960.  A factual explanation supporting probable cause follows.

2.     Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Device** from BENITEZ August 31, 2018, when he was arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960.  Specifically, BENITEZ was found in possession of approximately 6.96 kilograms of methamphetamine hidden in the engine firewall of the vehicle that he was driving.  The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 880 Front Street, Suite 3200, San Diego, California 92101.

3.     Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4.     Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the

information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5.     I am a Special Agent with HSI, which is a component agency of the DHS. I have been employed as an HSI Special Agent since October 2009. I am currently assigned to the HSI DSAC San Ysidro field office in San Diego, California. My job duties are to investigate the smuggling of controlled substances into the U.S. I have been cross-designated by the U.S. Drug Enforcement Administration to conduct narcotics investigations and enforce provisions of the Federal Controlled Substances Act, pursuant to Title 21 of the United States Code.

6.     Prior to employment with HSI, I was employed as a Postal Inspector with the U.S. Postal Inspection Service, from April 2007 until October 2009; as a Special Agent with the U.S. Secret Service, from May 2000 until April 2007; and as a Police Officer employed by the Atlanta Police Department, from December 1996 until May 2000.  Prior to my career in law enforcement, I received a Bachelor of Arts degree from Emory University in Atlanta, Georgia.

7.     As a federal agent, I am authorized to investigate violations of United States laws and I am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.  In preparation for this affidavit, I have discussed the facts of this case with other law enforcement agents and officers within HSI and other agencies.

8.     In the course of my career, I have become knowledgeable of the methods and modes of narcotics operations, including the methods of operation typically used by narcotics traffickers.  I have learned that narcotics traffickers often require the use of one

or more telephone facilities to negotiate times, places, schemes, and manners for importing, possessing, concealing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances.

9.    Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, and tablets, to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

10.    Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics and human trafficking investigations, I am also aware that:

    a. Drug traffickers will use digital devices like cellular telephones because they are mobile, and they have instant access to telephone calls, text, web, email, and voice messages;

    b. Drug traffickers will use digital devices like cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug traffickers and their accomplices will use digital devices like cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug traffickers will use digital devices like cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e. Drug traffickers will use digital devices like cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f. The use of digital devices like cellular telephones by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g. Individuals involved in the illegal possession and acquisition of drug trafficking often utilize digital devices like cellular telephones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, drugs, criminal proceeds, and assets purchased with criminal proceeds.

11. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to import methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the

importation of methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States;

   d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12.   Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

13.   Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to

communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

### FACTS IN SUPPORT OF PROBABLE CAUSE

14.    According to the report of CBP Officer Olsen, Officer Olsen was conducting roving inspections in the pre-primary area of the San Ysidro POE with his K-9 Unit on August 31, 2018. At about 6:00 p.m., the K-9 Unit alerted to the undercarriage of a dark grey 2007 Honda Accord, with California license plate 6ANB851, which was being driven by BENITEZ.

15.    According to the report of CBP Officer Rey, at about 5:40 p.m. on August 31, 2018, Officer Rey was conducting roving inspections in the pre-primary inspection area of the San Ysidro POE. At about that time, Officer Rey learned that CBP Officer Olsen's K-9 Unit had alerted to the floor area of the Accord. Officer Rey walked over to the Accord, which was in pre-primary lane 8, and asked BENITEZ where he was going. BENITEZ responded that he was going to work in Miramar, California. In response to Officer Rey's additional questions, BENITEZ said that he lived in Mexico but traveled into California for work every day, and that he was the owner of the car and everything in it. Officer Rey noted the strong smell of cleaning chemicals, and BENITEZ said that he had recently had the Accord detailed, and seemed to say he'd had the upholstery glued to the roof.

16.    Per Officer Rey's report, after this exchange, Officer Rey escorted BENITEZ and the Accord to the secondary inspection lot. There, the Accord was scanned in the "Z-Portal" X-Ray Machine, and no anomalies were seen. Officer Rey then conducted a physical inspection of the Accord. In his inspection of the engine bay, Officer Rey saw non-factory plastic clips holding a plastic bracket between the engine firewall and the windshield wipers. Officer Rey removed the plastic clips and opened the bracket; when the bracket opened, he saw packages wrapped in black tape. At this point, CBP Officers escorted BENITEZ to the security office at the POE.

17.    According to the report of CBP Officer DeLaurentis, at about 6:30 p.m. on August 31, Officer DeLaurentis was assigned to conduct a physical inspection of the

Accord. Officer DeLaurentis retrieved thirteen packages from the firewall of the Accord; initial testing on a sample of these packages indicated the presence of methamphetamine. At about 6:50 p.m., Officer DeLaurentis placed BENITEZ under arrest for a violation of 21 U.S.C. §§ 952 and 960.

18.     The Accord, the packages, BENITEZ's personal effects, and the **Target Device** were seized. The reports do not say whether the **Target Device** was seized from BENITEZ or from the Accord. However, from my training and experience, I know that when a person is taken to the security office at the San Ysidro POE, the person's effects are taken and held; if the person is arrested, those items are seized. Here, I note that BENITEZ was the driver and sole occupant of the Accord, and that he claimed to own the car and everything in it.

19.     I responded to the San Ysidro POE and interviewed BENITEZ. At about 10:30 p.m., I advised BENITEZ of his *Miranda* rights, which he waived. BENITEZ denied knowing the drugs were in the Accord, but also said that nobody else had access to the car. (He also denied receiving pressure from any person to import drugs into the United States.)

20.     Given the facts surrounding the arrest of BENITEZ, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activity of BENITEZ will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

      a.  tending to indicate efforts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

      b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

e. tending to identify the movement of proceeds associated with the trafficking of methamphetamine or some other federally controlled substance that was imported from Mexico into the United States;

f. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of BENITEZ, such as geolocation information, telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. For the reasons set forth above, I request permission to search the **Target Device** for items listed in Attachment B for the time period from July 2, 2018, up to and including September 1, 2018, the day following BENITEZ's arrest.

## **METHODOLOGY**

22. It is not possible to determine, merely by knowing a cellular telephone's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be

simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.     Law enforcement has not downloaded the **Target Device** previously. At the time of his arrest, BENITEZ provided the passcode for the phone, but investigators could not download it due a technical issue. In any event, I do not rely on any information from the contents of the **Target Device** in this warrant application. Going forward, the Government will rely only on searches of the **Target Device** authorized by the Court.

## CONCLUSION

26.     Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that BENITEZ used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

27.     Because the **Target Device** was promptly seized following the arrest of BENITEZ at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by him continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from July 2, 2018, up to and including September 1, 2018.

28.     WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
CHRISTIAN A. WHYTE
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on
this _17_ day of September, 2019.

_____
THE HON. WILLIAM V. GALLO
United States Magistrate Judge

*Affidavit in Support of Search Warrant*

10